UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JUSTIN R. SEXTON,<br><br>               Plaintiff,<br><br>  vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>               Defendant. | CIV. 16-5004-JLV<br><br>ORDER |

**INTRODUCTION**

On January 25, 2016, plaintiff Justin R. Sexton filed a complaint appealing the final decision of Nancy A. Berryhill,[1] the acting Commissioner of the Social Security Administration, finding him not disabled. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 9). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 11). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 13) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 12) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Fed. R. Civ. P. 25(d), Ms. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On March 12, 2012, Mr. Sexton filed an application for supplemental security income ("SSI") benefits alleging an onset of disability date of July 31, 2003. (Docket 12 ¶ 2). On June 5, 2014, the administrative law judge ("ALJ") issued a decision finding Mr. Sexton was not disabled. Id. ¶ 8; see also Administrative Record at pp. 13-23 (hereinafter "AR at p. ___"). On November 30, 2015, the Appeals Council denied Mr. Sexton's request for review and affirmed the ALJ's decision. (Docket 12 ¶ 9). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Mr. Sexton timely appeals.

The issue before the court is whether the ALJ's decision of June 5, 2014, that Mr. Sexton was not "under a disability, as defined in the Social Security Act, since March 24, 2010, [through June 5, 2014]" is supported by the substantial evidence in the record as a whole. (AR at pp. 22-23) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial

evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to SSI benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a

3

claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).[2]  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  AR at pp. 13-23; see also Docket 12 ¶¶ 35-45.

**STEP ONE**

At step one, the ALJ determined Mr. Sexton had not been engaged in substantial gainful activity since March 24, 2010, the date upon which he protectively filed for SSI benefits.[3]  (Docket 12 ¶ 35).

---

[2]All further references will be to the regulations governing SSI benefits, except where specifically indicated.

[3]The ALJ found Mr. Sexton performed work in 2010 and the third quarter of 2011 but the "earnings [were] below the level of substantial gainful activity . . . ."  (AR at p. 15).

### **STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."  20 CFR § 404.1520(a)(4)(ii).  "It is the claimant's burden to establish that his impairment or combination of impairments are severe."  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).  A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.  20 CFR § 404.1521.  An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby, 500 F.3d at 707.  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  Id. (citation omitted).  Additionally, the impairment must have lasted at least twelve months or be expected to result in death.  See 20 CFR § 404.1509.

The ALJ found Mr. Sexton suffered from the following severe impairments: "depression, anxiety NOS, posttraumatic stress disorder (PTSD), and mixed personality disorder."  (AR at p. 15, citing 20 CFR § 416.920(c)) (bold omitted).

### **STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1").  20 CFR §§ 404.1520(d), 404.1525, and 404.1526.  If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the

impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.  A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  If not covered by these criteria, the analysis is not over, and the ALJ proceeds to the next step.

At step three, the ALJ found Mr. Sexton's severe impairments did not meet or equal a listing under Appendix 1.  (AR at p. 16).  Mr. Sexton does not challenge this finding.

### **STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e).  RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments.  20 CFR § 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe. 20 CFR § 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v.

6

Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (stating because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence."). The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.'" Guilliams, 393 F.3d at 803 (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments." Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)). As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1521(a).

Plaintiff argues the ALJ committed error at this stage because the ALJ failed to develop the record by not obtaining the treatment notes of Mr. Sexton's treating psychologist, Dr. Margaret D. Kelsey. (Docket 14 at pp. 18-20). Plaintiff points out the "ALJ's duty to develop the record is heightened when the claimant is, as here, unrepresented." Id. at p. 19 (citing Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987)) (additional citations omitted). Plaintiff claims the ALJ's duty, as detailed in 20 CFR § 416.912, included collecting Dr. Kelsey's

records because she treated plaintiff within 12 months of his date of application. Id. at p. 19 (citing Docket 12 ¶¶ 2, 60, & 63). Plaintiff asserts the ALJ's failure to obtain and consider Dr. Kelsey's records led to the ALJ applying an improper legal standard that resulted in prejudice. Id. at pp. 19-20.

The Commissioner argues the "ALJ properly fulfilled his duty to develop the record." (Docket 17 at p. 4). Even if the ALJ's efforts did not comport with the duty, defendant claims plaintiff does not prevail because he cannot establish prejudice. Id. at pp. 4-5. Defendant contends plaintiff did not sufficiently bring his prior treatment with Dr. Kelsey to the ALJ's attention because the ALJ received only a short letter between the two administrative hearings he held. Id. at pp. 5-6.

Defendant points out that at the first hearing plaintiff's mother indicated she would submit plaintiff's medical records and the "ALJ told them to contact his office if there was any problem obtaining the records so his staff could help get them." Id. at p. 6. Defendant argues the ALJ "reasonably believed he had all of the records he needed to proceed" because before the second hearing plaintiff underwent a second consultative mental examination and the ALJ obtained an assessment from a state agency psychologist, Dr. Thomas Atkin. Id. at pp. 6-7.

Defendant claims the ALJ met his duty because there was "a reasonably complete record that contain[ed] sufficient evidence for him to make an informed decision." Id. at p. 7 (citing Haley v. Massanari, 258 F.3d 742, 748 (8th Cir.

8

2001)). Additional information, defendant argues, is only required if the evidence in the record is inadequate to determine the claim's merits. Id. (citing Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004)).

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. . . . Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). "The regulations make this nature of SSA proceedings quite clear. They expressly provide that the SSA 'conduct[s] the administrative review process in an informal, nonadversary manner.'" Id. at p. 111 (citing 20 CFR § 404.900(b)). "The regulations further make clear that the [Appeals] Council will 'evaluate the entire record,' including 'new and material evidence,' in determining whether to grant review." Id. (citing 20 CFR § 404.970(b)).

"[S]ocial security hearings are non-adversarial. . . . the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." Id. (referencing Richardson v. Perales, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts.")) (other reference omitted). "[T]he ALJ is not required to function as the

claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008).

The sole document in the administrative record on Dr. Kelsey's treatment of plaintiff is a letter from Dr. Kelsey indicating her view about plaintiff's impairments and inability to work. (AR at p. 398). The letter states Dr. Kelsey "met [Mr. Sexton] previously over the years when his mother brought him to counseling, due to the issues he was suffering from." Id. Dr. Kelsey explains that during those visits she "obtained [an] extensive history [of Mr. Sexton], and it is [her] professional opinion that [Mr. Sexton] suffers from extreme Posttraumatic Stress Disorder[,]" a condition that makes it "at this time[] . . . impossible for him to hold a job." Id. Dr. Kelsey's letter states Mr. Sexton's inability to work "extremely limited" his opportunity "to seek appropriate services and provide appropriate documentation . . . ." Id.

The ALJ found Dr. Kelsey's conclusions unpersuasive and gave them little weight because "they do not set forth the claimant's specific limitations or capabilities and they are markedly inconsistent with the medical evidence documenting very little treatment, largely normal mental status exams, reports of relatively intact activities of daily living and relationships with a girlfriend and at least two friends, and indications of exaggerated and unbelievable symptoms and complaints." (AR at p. 20).

10

The ALJ found the opinion of Dr. Thomas Atkin, a non-examining psychologist, "most persuasive." Id.; JSMF ¶ 42. In explaining the substantial weight given to Dr. Atkin's opinion, the ALJ noted Dr. Atkin viewed Dr. Kelsey's conclusions as "unpersuasive because there is no evidence of significant duration of the treating relationship between her and the claimant, there are no accompanying treatment notes from Dr. Kelsey, and the opinion is inconsistent with the other medical evidence of record." (AR at p. 21).

Based on the ALJ's reasons for giving Dr. Kelsey's opinion little weight, Dr. Kelsey's letter provided the ALJ with "aware[ness] of a critical issue" requiring the ALJ to take "steps to develop the record . . . ." Snead, 360 F.3d at 838. The "extensive history" Dr. Kelsey states she has with Mr. Sexton may include documents that could "set forth the claimant's specific limitations or capabilities" that the ALJ found absent from the record. (AR at pp. 20, 398). The ALJ found "medical evidence documenting very little treatment[,]" which undermined Dr. Kelsey's opinion, but Dr. Kelsey's letter opines Mr. Sexton's lack of treatment is due to his extreme condition. Id.

The ALJ's side-by-side discussion of Dr. Atkin and Dr. Kelsey's opinions supports the conclusion that the ALJ had a duty to seek further records of Mr. Sexton's treatment with Dr. Kelsey. Dr. Atkin believed there was insufficient evidence on how long Dr. Kelsey treated Mr. Sexton. (AR at p. 21). Dr. Kelsey's letter states she treated Mr. Sexton "over the years when his mother brought him to counseling . . . ." Id. at p. 398. Dr. Atkin mentioned the absence of

11

treatment notes as a reason for Dr. Kelsey's opinion being unpersuasive.  Id. at p. 21.  If the ALJ obtained Dr. Kelsey's notes, Dr. Atkin may be less likely to find Dr. Kelsey's opinion unpersuasive.

This case is comparable to the cases Vossen v. Astrue, 612 F.3d 1011, 1016-17 (8th Cir. 2010), and Cox v. Apfel, 160 F.3d 1203, 1209-1210 (8th Cir. 1998).  In Vossen, "the ALJ questioned the authenticity of the data and observations" within a treating physician's opinion addressing Vossen's RFC.  Id. at 1016.  Instead of determining the authenticity of the report, the ALJ relied on a different physician's report.  Id.  "[T]he primary reason for [relying on the second report] was the suspected inauthenticity of [the first report.]"  Id.  The court remanded the case because the ALJ's duty to develop the record required clarifying the authenticity of the first report.  Id. at 1016-17.  In Cox, the record contained sufficient indications that the claimant's history of morphine use needed to be "developed or explored" by the ALJ.  Cox, 160 F.3d at 1209.  The ALJ erred in Cox by "rely[ing] on the absence of . . . records" to make a determination on the claimant's medical condition instead of further developing the record on that issue.  Id.

In Mr. Sexton's case, the ALJ found Dr. Kelsey's opinion unpersuasive primarily because her letter on her treatment of Mr. Sexton did not provide specifics or explain his lack of significant treatment.  (AR at p. 20).  Dr. Atkin's opinion, which the ALJ found persuasive, criticized similar points in Dr. Kelsey's letter.  Id. at p. 21.  As explained above, Dr. Kelsey's letter indicated she likely

12

has records that could answer the ALJ and Dr. Atkin's criticisms and she was willing to be of further help.  Id. at p. 398.  Similar to Vossen, the specific problems the ALJ identifies in Dr. Kelsey's opinion could be answered through development of the record.  See Vossen, 612 F.3d at 1016-17.  Analogous to Cox, the ALJ's determination of Dr. Kelsey's view and Mr. Sexton's RFC improperly relied on the absence of Dr. Kelsey's records.  See Cox, 160 F.3d at 1209.

The record before the ALJ gave clear and distinct signals there were other medical and psychological records significant to Mr. Sexton's case which were not part of the administrative record.  "Once aware of the critical issue" of Mr. Sexton's extensive relationship with Dr. Kelsey, "the ALJ should have taken steps to develop the record" by obtaining those records.  Snead, 360 F.3d at 838.  Because the issues the ALJ pointed out in Dr. Kelsey's opinion may be undermined by Dr. Kelsey's treatment notes and records, the ALJ's duty to develop the record required him to make sufficient efforts to obtain the notes and records.  See Vossen, 612 F.3d at 1016-17; see also Thurston v. Colvin, CIV. 15-5024, 2016 WL 5400359, at *4-6 (D.S.D. Sept. 27, 2016) (finding a violation of the duty to develop the record); Williams v. Colvin, Civil No. 15-CV-02198, 2016 WL 5219463, at *4-6 (W.D. Ark. Sept. 20, 2016) (same).

While Mr. Sexton bore the burden of persuasion, the ALJ was responsible for development of the record.  Snead, 360 F.3d at 838.  The ALJ's effort to "act neutrally in developing the record" was insufficient.  Id.  The ALJ erred as a

matter of law at step four of the sequential evaluation process.  This constitutes reversible error.

The ALJ's failure to develop the record on these issues "strain[s] [the court's] confidence in the 'reliability of the RFC upon which the ALJ based his decision.' " Vossen, 612 F.3d at 1016 (citing Snead, 360 F.3d at 839).  Mr. Sexton suffered prejudice through the ALJ's failure to develop the record because Dr. Atkin grounded his opinion and the ALJ based his conclusions on issues that Dr. Kelsey's treatment records, if obtained, may have firmly countered.  See Snead, 360 F.3d at 839 ("Because this evidence might have altered the outcome of the disability determination, the ALJ's failure to elicit it prejudiced [claimant] in [his] pursuit of benefits.") (citing Shannon, 54 F.3d at 488).  "With [these] central and potentially dispositive issue[s] unexplored by the ALJ, [the court has] no confidence in the reliability of the RFC upon which the ALJ based his decision." Id.

The evidence not considered by the ALJ detracts from the decision to deny disability benefits.  Reed, 399 F.3d at 920.  The ALJ's failure to develop the record is both unfair and prejudicial.  Shannon, 54 F.3d at 488.

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion (Docket 13) is granted.

IT IS FURTHER ORDERED that pursuant to sentence four of 42 U.S.C. § 405(g) the case is remanded to the Commissioner for development of the record and rehearing consistent with this decision.

Dated March 6, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE